BRANDI L. HARPER (SBN 264672)
Brandi@castilloharper.com
JOSEPH N. BOLANDER (SBN 280857)
Joe@castilloharper.com
CASTILLO HARPER, APC
6848 Magnolia Ave. Suite 100,
Riverside CA. 92506
Ph: (909) 466-5600
Fax: (909) 466-5610

Attorneys for PLAINTIFF
BRENTON BULRICE

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENTON BULRICE;<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>CITY OF BANNING; A Public Entity; and DOES 1 THROUGH 10 INCLUSIVE;<br><br>　　　　　Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF BASED ON VIOLATOINS OF:**<br><br>Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301-4333<br><br>**DEMAND FOR JURY TRIAL**<br>F.R. Civ. P. Rule 38<br>C.D. Cal. Local Rule 38-1<br><br>**(Exempt from Filing Fee Pursuant to 38 U.S.C. § 4323(h)(1))** |

　　COMES NOW, BRENTON BULRICE who demands a jury trial and seeks damages and equitable and injunctive relief against DEFENDANT CITY OF BANNING.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF -** 1

## I.    PREFATORY

1. This is an action for damages and injunctive relief for violations of the rights of PLAINTIFF BRENTON BULRICE ("PLAINTIFF"). Defendant, CITY OF BANNING ("DEFENDANT") has willfully violated the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §4301 *et. seq.*

## II.    JURISDICTION AND VENUE

2. PLAINTIFF's action is authorized by 38 U.S.C. §4301 *et. seq.* which allows redress for the deprivation of rights against members of the armed forces.

3. Jurisdiction is conferred on this Court by 28 U.S.C. §1343(4) which provides for the protection of civil rights of members and veterans of the armed forces. Jurisdiction is also conferred on this Court by 38 U.S.C. 4323(b).

4. Venue is proper in the Central District of California because the wrongs alleged herein occurred within the City of Banning, in Riverside County, which is located within the Central District of California.

## III.    PARTIES

5. PLAINTIFF was at all times relevant to the allegations contained herein, a resident of Riverside County, State of California. PLAINTIFF's home address is confidential pursuant to California Penal Code §§146e and 832.7, and California Vehicle Code §1808.4(a)(11).

6. Defendant CITY OF BANNING is a duly enacted municipality organized and existing under the laws of the State of California and is wholly situated in the County of Riverside. The Banning Police Department ("BPD") is an operating Department, Agency, and/or Office of DEFENDANT.

7. PLAINTIFF, at all times relevant to the allegations contained herein, was employed by the CITY OF BANNING as a police officer with the BPD.

8. Defendants DOES 1 through 10 are unknown or unidentified at this time, but are employees of CITY OF BANNING. Upon information and belief, PLAINTIFF alleges that each DOE is in some manner responsible for the wrongs alleged herein, and that each such DEFENDANT advised, encouraged, participated in, ratified, directed, or conspired to do, the wrongful acts alleged herein. When the true names and capacities of said DEFENDANTS become known to PLAINTIFF, PLAINTIFF will seek relief to amend this Complaint to show the true identities of each said DOE in place of their fictitious names as DOES 1 through 10.

9. DEFENDANTS, and DOES 1 Through 10, were the agent, employee and servant of every other Defendant and each Defendant alleged herein acted in the course and scope of said agency, service and employment at all relevant times.

10. There is no administrative exhaustion requirement under USERRA. 38 U.S.C. §4323 (a)(2)(A).

## IV.   FACTS COMMON TO ALL COUNTS

11. PLAINTIFF is employed by the CITY OF BANNING as a police officer. PLAINTIFF is and has been an active duty member of the United States Army Reserves at all relevant periods concurrent with his employment and military leaves at the CITY OF BANNING.

12. PLAINTIFF first Joined the United States Army on or about July 4, 2001. PLAINTIFF's first deployment was to Korea in or about 2001 at which time PLAINTIFF had achieved the rank of E3. PLAINTIFF had three more deployments to Iraq and Afghanistan. PLAINTIFF was promoted to Sergeant in or around 2004 and later promoted to Staff Sergeant in or about November of 2006.

13. PLAINTIFF is currently a Staff Sergeant in the United States Army reserves, a Uniformed Service.

14. PLAINTIFF'S most recent deployment was to Afghanistan in 2012. Not long after his return, he enrolled in the police academy in March of 2013.

Shortly after finishing the police academy, PLAINTIFF was hired by DEFENDANT as a police officer with BPD in or about September 2013. PLAINTIFF was a reservist in the Army when he began his employment with the CITY, and he has remained one during the entirety of his employment with the CITY.

15.     A police officer like PLAINTIFF who possesses military training and leadership experience is a valuable asset to the community he serves.  However, early on in PLAINTIFF's career, it became apparent that his military experience and continuing reserve obligations were negatively viewed by influential and high ranking members of the BPD.  PLAINTIFF is informed and believes and thereon alleges that he was targeted for and subjected to adverse action based in substantial part on biased negative stereotypes and perceptions regarding military personnel and his continuing reserve obligations.

16.     Soon after being hired, a Banning Police Department Sergeant told PLAINTIFF, "you don't know anything," "being in the military means nothing," "I (the Sergeant) don't want to hear about military."  This same Sergeant told PLAINTIFF that in light of his continuing reserve obligations, he was "lucky to have a job."

17.     PLAINTIFF reported these statements to his watch commander. PLAINTIFF's watch commander wrote a memo regarding PLAINTIFF's complaint and forwarded it to Department administration.  The memorandum eventually landed on the desk of Lieutenant Phillip Holder.  PLAINTIFF is informed and believes and thereon alleges that Holder took no action.  A year and a half later, PLAINTIFF was assigned to the team of the Sergeant who had made these anti-military remarks.

18.     PLAINTIFF, as an Army Reservist, is required to attend weekend training at least once a month and active duty training for at least two contiguous weeks each year.

19. PLAINTIFF was not given reasonable accommodation to take military leave. In fact, he was at times dissuaded and prevented from taking military leave, and at other times punished by Defendant for taking military leave.

20. PLAINTIFF has provided advance notice of all military leaves of absence he has taken from the BANNING POLICE DEPARTMENT, and the timing of such notice was always reasonable under the circumstances.

21. It is mandatory that all Banning Police Officers complete a one-year probationary period with the BPD. Prior to completing probation, an officer can be released without cause. PLAINTIFF was scheduled to complete his probationary period in September of 2014.

22. From September 2013, in or about the time of PLAINTIFF's hire, to February of 2014, BPD administrators told PLAINTIFF that in order to be granted leave to participate in his monthly mandatory military battle assemblies and tactical training, PLAINTIFF was required to find his own replacement to cover his shifts. PLAINTIFF at times could not find coverage for his shift. PLAINTIFF was also told by DEFENDANT that taking military leaves of absence would extend his probation and his field training period, when similar non-military leaves did not have the same effect. And he was further informed that if he took military leave he would be required to use paid time off (PTO) or other accrued time for the period of his absence. Unable to find coverage, fearing retaliation and knowing that he could be easily released from probation, PLAINTIFF jeopardized his standing in the military by not performing required Army service when it conflicted with his civilian job. This cost PLAINTIFF pay and opportunities for advancement within the military.

23. Beginning in or about February of 2014, the Department changed its policy regarding military leaves, although it remained out of compliance with USERRA. PLAINTIFF was no longer required to find coverage for his shifts to take military leave, however, he was still *required* to burn PTO, Compensatory Time,

holiday leave, or other accrued time while he was on military leave. PLAINTIFF was not given the *option* to use his accrued hours, in accordance with the law, he was forced to burn his time. Between February 2014 and January of 2016, PLAINTIFF is informed and believes and thereon alleges that he was forced to burn hours of accrued time while on military leaves of absence, hours that he would have not used but for Defendant's illegal policy.

24.  In or around April of 2015, Lieutenant Holder told PLAINTIFF that he was required to "flex" his Department work schedule when it conflicted with his military drill weekends. The Department required PLAINTIFF to maintain 84 hours in the pay period, comprised of either hours worked or use of accrued time. This meant that PLAINTIFF was required to work additional non-scheduled work days in pay periods during which he missed work due to military leave. In short, PLAINTIFF was required to "make up" hours of work missed while he was on protected leave. PLAINTIFF is informed and believes and thereon alleges that other employees on comparable leaves of absence are not required to make up hours during a pay period for time missed while on leave. PLAINTIFF would not have worked multiple flextime "makeup" shifts voluntary in the absence of DEFENDANT's illegal policy.

25.  It was not until in or around January of 2016 that DEFENDANT began providing15 days of paid military leave.

26.  Anti-military or anti-military reservist sentiments are routinely expressed within the BPD. In or around March of 2015 Sergeant Fisher openly made a statement to the following effect: "I don't know why the City of Banning would hire a reservist, because your weekend drills take away too much time from the agency." Other leaders within the Department have expressed similar anti-military sentiments.

27. PLAINTIFF was scheduled to complete his probationary period in September of 2014, however, his probationary period was extended until in or around April of 2015. PLAINTIFF is informed and believes and thereon alleges that the extension of his probation was motivated by antimilitary reservist sentiment and stereotypes, and in retaliation for his legally protected military leaves.

28. PLAINTIFF is informed and believes and thereon alleges that the Department cited false and pretextual reasons for PLAINTIFF's probation extension. For instance, while on scene at a house with the gang task force to serve a warrant, PLAINTIFF conducted a routine vehicle search. The vehicle was cluttered with items, including a fish tank that was also full of miscellaneous items. PLAINTIFF moved the tank onto a flat surface so that he could conduct a better search. Inside the fish tank he found, based on his military and law enforcement training, what appeared to be an MK 2 pineapple grenade, with the pin intact. The grenade was obscured from view underneath other items in the tank. PLAINTIFF could not have known a grenade was in the tank before moving it, and the purpose of the search would not have put a reasonable officer on notice of the possible presence of explosives. PLAINTIFF did not handle the grenade. He immediately stepped away from the tank. Correctly treating the situation as if the grenade was real and live, PLAINTIFF reported it to his commanding officers and assisted in clearing the scene while the Explosive Ordinance Disposal (EOD) technicians were called.

29. The EOD team safely destroyed the grenade. PLAINTIFF received praise from his colleagues and supervisors, and while on scene PLAINTIFF heard nothing further about it. However, sometime later, this incident was cited by Lieutenant Holder as a key reason for extending PLAINTIFF's probation. PLAINTIFF was written up for moving the fish tank because there was a grenade

in it.  But again, PLAINTIFF could not have known that there was a grenade in the fish tank until he searched it, and the tank could not have been safely searched while it sat inside the vehicle under the circumstances.  This write-up, along with two minor instances in which PLAINTIFF was late to work after switching from nightshift to dayshift, were cited as reasons for the probation extension.  Other non-military reservists had been late to work as much if not more than PLAINTIFF, but were not extended on probation or otherwise subjected to adverse action.

      30.    Based on information and belief, PLAINTIFF additionally alleges that he has also been denied training opportunities afforded to other probationers and lower seniority permanent officers, in substantial part based on his military status and reserve obligations.

      31.    PLAINTIFF is further informed and believes and thereon alleges that he has been denied special assignments in substantial part based on his military status and reserve obligations.  PLAINTIFF applied to be a detective with the gang task force in or around April or May of 2016.  PLAINTIFF is informed and believes that an officer with less qualifications for the position was selected in substantial part based on PLAINTIFF's military status and ongoing reserve obligations.

      32.    PLAINTIFF is informed and believes and thereon alleges that Lieutenant Holder was delegated final decision making authority, and/or his recommendations were given great weight by those who maintained final decision making authority, over PLAINTIFF's probation extension and special assignment denial.  PLAINTIFF is further informed and believes and thereon alleges that Holder harbors bias towards PLAINTIFF based on his military reserve obligations and military service.  Holder exhibited that bias when he, in or about early 2017, informed PLAINTIFF's military commander that the Department was having a lot

of "problems" with PLAINTIFF, that PLAINTIFF was "lucky to have a job in law enforcement due to his Military deployments." Holder further told PLAINTIFF's military commanding officer that PLAINTIFF had "PTSD" (Post-Traumatic Stress Disorder) as a result of his previous combat tours. PLAINTIFF does not have PTSD. The comments were unsolicited, untrue, and unrelated to Holder's ostensible purpose for speaking with PLAINTIFF's military commander. Holder's comments, in the context in which they were made, appeared intended to harm PLAINTIFF's standing in the military, as Holder was suggesting there were questions about PLAINTIFF's mental stability and fitness to serve.

33. PLAINTIFF is informed and believes and thereon alleges that Holder is not a psychologist, psychiatrist, medical doctor, or in any other way qualified to diagnose PLAINTIFF, or anyone else, with PTSD. Moreover, a reasonable person would know that PTSD carries with it a stigma that would potentially be harmful to PLAINTIFF's military and civilian careers. Holder's assumption that all persons who have honorably served this country in combat suffer from PTSD is offensive to those actually dealing with this potentially debilitating condition and to those servicemembers who are not, like PLAINTIFF.

34. Holder similarly insinuated to one of PLAINTIFF's military subordinates that he had PTSD or some other mental health issue, asking if the Sergeant had "ever seen anything in PLAINTIFF's actions or attitude that would make him think PLAINTIFF had mental instability issues or PTSD"

35. Holder has further exhibited disdain for PLAINTIFF's reserve obligations by deriding PLAINTIFF to others at the Department for "gaming the system" with his military leaves, suggesting that PLAINTIFF's military service is on some level illegitimate.

36. In addition to the harm and damages associated with PLAINTIFF's probation extension, special assignment denials, forced use of accrued time, and

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 9

the requirement that PLAINTIFF pick up extra shifts to make up for protected military leaves of absence, PLAINTIFF lost wages and advancement opportunities within the Army as a direct result of DEFENDANT's wrongful conduct. PLAINTIFF lost a $6,000.00 sign on bonus, a condition of which required a level of attendance that he was unable to achieve due to DEFENDANT's denials and dissuasion of his military leaves. Additionally, due to the same, PLAINTIFF has been at the same rank since 2006 (E-6). PLAINTIFF has been unable to obtain promotion to the next rank (E-7) due to his inability to get time off to attend the necessary military school and perform other necessary tasks that would secure a promotion.

## V.

## FIRST CAUSE OF ACTION

**VIOLATIONS OF USERRA (38 U.S.C. § 4311 [Retaliation/Discrimination])**

**AGAINST ALL DEFENDANTS**

37.     PLAINTIFF repeats and re-alleges each and every allegation set forth above, and incorporates the same by reference as though set forth fully herein.

38.     USERRA, 38 U.S.C. §§ 4301 *et seq*., incorporated in its entirety herein by reference, in 38 U.S.C.A. §4301 sets forth the statutes express intent, "The purpose of this chapter is (1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service; . . . and (3) to prohibit discrimination against persons because of their service in the uniformed services."

39.     38 U.S.C.A. §4311(a) states, "person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment

by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation…"

40. 38 U.S.C.A. §4311(b) provides: "An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter. . . or (4) has exercised a right provided for in [same]." "An employer violates USERRA if any employee's membership….service…or obligation for service in the uniformed services is a motivating factor in the employer's [adverse] action, unless the employer can prove that the action would have been taken in the absence of such membership….service…or obligation for service…." 38 U.S.C.A. §4311(c)(1).

41. PLAINTIFF is and was, at all times material herein, a reservist with the United States Army and an employee who was protected under the USERRA from retaliation and discrimination.

42. PLAINTIFF's military service was a motivating factor in Defendants extension of PLAINTIFF's probation, denial of special assignments and denial of training opportunities.

43. DEFENDANT, at all times material herein, was an "employer" as defined by 20 C.F.R. 1002.5(d)(1).

44. DEFENDANT, in violation of the USERRA anti-retaliation and anti-discrimination provisions (38 US.C. 4311), retaliated and discriminated against PLAINTIFF because of his military status and ongoing reserve obligations; specifically, DEFENDANT extended PLAINTIFF's probationary period, denied him a paid special assignment, and denied him training opportunities.

45. PLAINTIFF suffered damages legally caused by the DEFENDANT's acts, including the loss of pay, seniority and special assignments.

46. PLAINTIFF is entitled to reasonable attorney fees, expert fees, and costs, pursuant to 38 U.S.C. 4323, and as otherwise provided by law.

47. DEFENDANT's acts, including retaliating and discriminating against PLAINTIFF, alleged herein, were willful, knowing, and intentional retaliation against PLAINTIFF due to his military status and/or continuing reserve obligations, or such acts were taken with a substantial disregard for the matter of whether DEFENDANT's conduct violated USERRA, entitling PLAINTIFF to double damages.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF USERRA (38 U.S.C. § 4316(d)
### [Forced Use of Accrued Time])
## AGAINST ALL DEFENDANTS

48. PLAINTIFF repeats and re-alleges each and every allegation set forth above, and incorporates the same by reference as though set forth fully herein.

49. **Absence for Military Leave:** 38 U.S.C.A. § 4316(b)(1) states: "[A] person who is absent from a position of employment by reason of service in the uniformed services shall be- (A) deemed to be on furlough or leave of absence while performing such service: and (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice or plan in effect at the commencement of such services or established while such person performs such service."

50. **Forced Use of Leave: 38 U.S.C.A.** § 4316 (d) "Any person whose employment with an employer is interrupted by a period of service in the uniformed services shall be permitted, upon request of that person, to use during such period of service any vacation, annual, or similar leave with pay accrued by the person before

the commencement of such service. No employer may require any such person to use vacation, annual, or similar leave during such period of service." See also 20 CFR §1002.153 (b) ("The employer may not require the employee to use accrued vacation, annual, or similar leave during a period of service in the uniformed services.").

51. PLAINTIFF is and was, at all times material herein, a reservist with the United States Army and an employee who was protected under the USERRA from retaliation and discrimination.

52. DEFENDANT at all times material herein was an "employer" as defined by 20 C.F.R. 1002.5(d)(1).

53. DEFENDANT, in violation of 38 US.C. § 4316(d)(1), required PLAINTIFF to use accrued time while he was on military leave, in violation of USERRA.

54. PLAINTIFF suffered damages legally caused by the DEFENDANT's acts, including the loss of pay and the depletion of his leave banks.

55. PLAINTIFF is entitled to reasonable attorney fees, expert fees, and costs, pursuant to 38 U.S.C. 4323, and as otherwise provided by law.

56. DEFENDANT's acts as described above were undertaken willfully and in knowing violation of its obligations under USERRA, or such acts were taken with a substantial disregard for the matter of whether DEFENDANT's conduct violated USERRA, entitling PLAINTIFF to double damages.

*///*
*///*
*///*
*///*

## THIRD CAUSE OF ACTION

## VIOLATIONS OF USERRA (38 U.S.C. § 4302, 4311, 4316

## [Unlawful Denial and Dissuasion of Military Leave / Unlawful Prerequisites Implemented])

## AGAINST ALL DEFENDANTS

57.   PLAINTIFF repeats and re-alleges each and every allegation set forth above, and incorporates the same by reference as though set forth fully herein.

58.   **Denial of Benefits:** 38 U.S.C.A § 4311(c)(1)(a) provides that "A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation".....

59.   38 U.S.C.A §4303(2) also provides: "The term 'benefit', 'benefit of employment', or 'rights and benefits' means any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment".

60.   **Absence for Military Leave:** 38 U.S.C.A. § 4316(b)(1) states: [A] person who is absent from a position of employment by reason of service in the uniformed services shall be- (A) deemed to be on furlough or leave of absence while performing such service: and (B) entitled to such other rights and benefits not

determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice or plan in effect at the commencement of such services or established while such person performs such service.

61. Title 38 U.S.C. § 4302(b) provides: This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

62. PLAINTIFF is and was, at all times material herein, a reservist with the United States Army and an employee who was protected under the USERRA from retaliation and discrimination.

63. DEFENDANT, at all times material herein, was an "employer" as defined by 20 C.F.R. 1002.5(d)(1).

64. DEFENDANT, in violation of 38 U.S.C. §§ 4316, 4302, and 4311 required PLAINTIFF to work additional hours during pay periods in which he took protected military leave, while DEFENDANT did not require persons on other non-military protected leaves to do so. DEFENDANT denied PLAINTIFF of a benefit of employment on account of his military service, and subjected PLAINTIFF to additional prerequisites to the exercise of his rights under USERRA, thereby chilling and dissuading his use of protected leave. DEFENDANT further wrongfully chilled and dissuaded and prevented PLAINTIFF's use of protected leave by requiring PLAINTIFF to find coverage before allowing him to take military leave.

65. PLAINTIFF suffered damages legally caused by the DEFENDANT's acts, including the loss of pay and the depletion of his leave banks, and damages

suffered by way of his military absences, including loss of military pay, benefits, promotions, and bonuses.

66. PLAINTIFF is entitled to reasonable attorney fees, expert fees, and costs, pursuant to 38 U.S.C. 4323, and as otherwise provided by law.

67. DEFENDANT's acts as described above were undertaken willfully knowingly in violation of its obligations under USERRA, or such acts were taken with a substantial disregard for the matter of whether DEFENDANT's conduct violated USERRA, entitling PLAINTIFF to double damages.

## VI.   **PRAYER**

WHEREFORE, PLAINTIFFS pray:

1. For general, compensatory (including present and future lost wages and benefits), and liquidated damages for willfulness, as well as other damages according to proof, that were directly or proximately caused by DEFENDANT's USERRA violations;
2. For costs of suit incurred herein;
3. For attorneys' fees under 38 U.S.C. § 4323 et seq. or as otherwise allowed by law;
4. For an award of interest, including prejudgment interest, at the legal rate, as allowed by law; and
5. For injunctive and equitable relief ordering DEFENDANT to:
   a. Cease and desist its unlawful conduct, policies and practices;
   b. Correct PLAINTIFF's seniority and payrate to reflect the payrate and seniority he would have obtained absent the unlawful probation extension;
   c. Promote PLAINTIFF to the gang unit assignment with retroactive seniority and benefits;

      d.  Expunge any negative personnel documents provided by DEFENDANT relating to the adverse actions that are the subject of this lawsuit;

      e.  And take any and all necessary and reasonable steps to remove the stigma and negative perception of PLAINTIFF created by DEFENDANT's illegal conduct and false comments made to others about PLAINTIFF inside and outside the organization.

6.  For any and all other appropriate relief the Court deems necessary.

Dated: April 21, 2017.      Respectfully Submitted,

CASTILLO HARPER APC

By:  _s/Joseph N. Bolander_____
Joseph N. Bolander, Esq.
Brandi L. Harper, Esq.
Attorneys for PLAINTIFF
BRENTON BULRICE

# DEMAND FOR TRIAL BY JURY

PLAINTIFFS hereby demands a jury trial under the Federal Rules of Civil Procedure Rule 38 and Central District Local California Rule 38.

Dated: April 21, 2017.

Respectfully Submitted,

CASTILLO HARPER APC

By: ____s/Joseph N. Bolander_____
Joseph N. Bolander, Esq.
Brandi L. Harper, Esq.
Attorney for PLAINTIFF
BRENTON BULRICE